Filed 3/3/16  P. v. Love CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069447 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI1301553) |
| TYRUS FORD LOVE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Eric M. Nakata, Judge.  Affirmed and remanded with directions.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Kristin A. Gutierrez Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Tyrus F. Love of attempted murder (Pen. Code, §§ 647, 187, subd. (a)[1]; count 1) and assault with a firearm (§ 245, subd. (a)(2); count 2). As to count 1, the jury found Love (1) personally inflicted great bodily injury under section 12022.7, subdivision (a); (2) personally and intentionally discharged a handgun causing great bodily injury under section 12022.53, subdivisions (b) through (d); and (3) committed the offense for the benefit of a criminal street gang in violation of section 186.22, subdivision (b)(1)(C). As to count 2, the jury found Love (1) personally used a handgun under section 12022.5, subdivisions (a) and (d); (2) personally inflicted great bodily injury under section 12022.55; and (3) committed the offense for the benefit of a criminal street gang in violation of section 186.22, subdivision (b)(1)(C). The trial court found Love had two prior strike convictions and sentenced Love to a total prison term of 70 years to life.

On appeal, Love asserts the court erred by (1) admitting into evidence statements he made to a jail intake officer concerning his gang affiliation and (2) failing to instruct the jury on the lesser included offense of attempted voluntary manslaughter based on a theory of unreasonable self-defense. Love also contends insufficient evidence supported the gang enhancements to his sentence and that he was denied the effective assistance of counsel because his attorney failed to request the trial court dismiss one of his prior strike convictions. Finally, Love contends, and the Attorney General concedes, the abstract of judgment should be corrected to reflect the actual sentence imposed. We conclude counsel was ineffective in failing to request that the court strike one of Love's strike

---

[1] Statutory references are to the Penal Code.

2

priors and, therefore, vacate Love's sentence and remand with directions to hold a new sentencing hearing. The judgment is otherwise affirmed.

BACKGROUND

A. *Evidence of the Underlying Offense*

On the evening of April 30, 2013, Love and his friends Reginald Malone and Elnora Jamison, who had all known each other for many years, were hanging out at the apartment complex where Love and Malone lived. Around dinner time, Jamison told Malone they needed to get food for their children, who were at home at Jamison's apartment in another nearby apartment complex. Neither Jamison nor Malone had a car, so Love agreed to drive them to a nearby pizza place. Malone rode in the front passenger seat and Jamison rode in the back. When they got to the restaurant, Jamison went inside to pick up the pizza, returned to the car, and Love drove them to Jamison's apartment.

Love pulled into the apartment complex and stopped in front of Jamison's first floor apartment. Jamison got out of the car with the pizza and went into her apartment. Corey Donald and two other men were sitting nearby, at the top of a staircase leading to Donald's second-story apartment above Jamison's apartment. Donald testified that after Jamison got out of Love's car, he heard someone from the car make disrespectful statements to him and his companions.[2] Donald testified he heard one of the men yell out "bitch ass, nigga, fuck boy," "bitch made," or "punk ass mark."

---

[2]    Donald could not be located for trial and the court found he was unavailable to testify. As a result, his preliminary hearing testimony was read for the jury.

3

Donald and the two other men responded by walking down the stairs towards Love's car. As Donald walked down the stairs, Love drove away from him towards the street, and then reversed back toward Donald. Donald and his friends reached the parking lot and seconds later Donald saw gunfire come from the driver's side window of Love's car. Donald and other witnesses heard five or six gunshots fired. Donald and his two companions turned and ran back up the stairs. Before Donald reached the staircase he was shot in the buttocks. Donald testified that he did not see the individual that fired the shots or the passenger in the car, but he was able to indentify Love's car.

Malone also gave an account of the incident. He testified there were seven or more young males hanging out at the top of the staircase with Donald. Malone saw the men pointing at the car he was in with Love and testified that it "looked like they had a problem." Malone stated that after Love turned the car around to pull out of the apartment complex, three or four of the men came running down the stairs toward the car. Malone testified that as Donald ran down the staircase Donald said "What the hell are you looking at, Cuz."

As Donald and his companions moved toward the car, Malone recalled Love saying "these niggas running up on the car." Malone testified "it was a scared moment. . . . they were running up on the car to come after us." Malone said he looked over at Love and saw him shooting backwards and over his shoulder out of the window as he drove out of the parking lot. Malone then saw Love put the gun down on the floor of the car as Love drove back to their apartment complex. Malone stated he was angry with Love for shooting towards the apartment where his children were. As a result, the

4

two men got into an altercation that was witnessed by other residents. The men eventually separated back to their own apartments. The following morning Malone went back to Jamison's apartment and spoke with Donald's girlfriend. Malone told her he was not involved in the incident and did not want any part of retaliation. Malone testified he knew Donald to be a gang member.

B. *Gang Evidence*

Jamison testified that she knew Love to be a gang member and that he had a "high rep" for being "hard in the streets." Rialto Police Officer Gregory Marquez and San Bernardino County Sherriff's Department Deputy Eric Stoll testified as gang experts. Both officers testified Love was a member of a small Rialto gang known as Noe Luv. The officers identified Love as a member of the gang based on his extensive array of gang-related tattoos.[3] Noe Luv has 25-30 active members and, according to Marquez, is known to be hostile to all other area gangs. Stoll also testified Noe Luv is a notoriously violent gang and its members are known as willing to confront anyone that challenges them, regardless of whether the challenger is a gang member. Marquez gave details about four prior offenses for which other Noe Luv members had been convicted.

With respect to Love's alleged crime, Marquez testified that Love's statement that Donald was a "mark" meant that Donald was marked for a bullet and that Love was telling Donald that he was "going to get shot." Marquez testified the statement was "a

_____

[3] Stoll also stated his opinion was based on Love's admission to a jail intake classification deputy that he was a member of the gang. The classification deputy, Mark Reynoso, was also called as a witness and testified that during the booking process Love told Reynoso he was a member of the Noe Luv gang and that he was not a dropout (i.e. former member) of the gang.

warning almost, mark ass bitch, you're wanted" and that in gang subculture the term is used to "label someone who has got a hit out on them." Stoll asserted that whenever a gang member possesses a firearm the reputation of the member and of the gang is enhanced because other gang members and rival gangs know to fear that member. Both experts testified that Love's alleged crimes were done in association with the Noe Luv gang and to benefit the gang. Stoll asserted Love benefitted personally from the crime because he will "be looked at as a member that's willing to take care of business, that's not soft, and is willing to commit violent crimes on behalf of the gang."

C. *Jury Verdict and Sentencing*

Following a seven day trial, the jury found Love guilty on count 1, non-premeditated attempted murder, and count 2, assault with a firearm. The jury further found Love had (1) used a firearm, discharged a firearm, and discharged a firearm causing great bodily injury during the commission of count 1; (2) used a firearm, and discharged a firearm from a motor vehicle causing great bodily injury during the commission of count 2; (3) inflicted great bodily injury during the commission of both offenses; and (4) committed both offenses for the benefit of a criminal street gang. At the subsequent trial on the prosecution's strike prior allegations, the trial court found Love had two prior serious felony convictions within the meaning of the Three Strikes law. Love's counsel indicated his intention to submit a sentencing brief, and to bring a motion for new trial as well as an application to strike under *People v. Superior Court* (1996) 13 Cal.4th 497 (*Romero*).

6

Thereafter, the defense brought an unsuccessful new trial motion asserting the evidence was not sufficient to support the attempted murder conviction and that new evidence, not available at trial, could result in a not guilty verdict. Love's counsel did not request the court strike either strike prior conviction. The court sentenced Love to a total prison term of 70 years to life. The term consisted of 45 years to life (15 years to life tripled under the Three Strikes law) on count 1 plus 25 years to life consecutive on the enhancement to that count under section 12022.53, subdivision (d). The court imposed and stayed additional terms on the three other enhancements attendant to count 1. The court sentenced Love to a term of 27 years to life on count 2 and stayed the sentence pursuant to section 654, and imposed and stayed additional terms for each of the three enhancements attendant to count 2.

## DISCUSSION

### I

*Admission of Love's Booking Testimony*

Love contends the court's admission of his statements to Officer Reynoso constituted a violation of the Fifth Amendment because he was not first advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436. He asserts this error was prejudicial because without the admission of this testimony, the evidence did not show he was a member of the Noe Luv gang at the time of the incident.

Citing *People v. Gomez* (2011) 192 Cal.App.4th 609, the Attorney General explains that at the time of trial, "case authority supported the proposition that routine questions during booking about gang affiliation, posed for security purposes and not

7

designed to elicit an incriminating response, fell within *Miranda*'s booking exception."

The Attorney General concedes, however, that after Love's trial the California Supreme Court rejected the exception outlined in *Gomez*. In *People v. Elizalde* (2015) 61 Cal.4th 523 (*Elizalde*), the Supreme Court held that while police may ask questions to address jail security concerns, when police know or should know that such an inquiry is reasonably likely to elicit an incriminating response from the suspect, the suspect's responses are not admissible in a subsequent criminal proceeding unless the initial inquiry has been preceded by *Miranda* admonishments. (*Elizalde*, *supra*, at pp. 527, 538, fn. 9.) Nonetheless, "[t]he erroneous admission of a defendant's statements obtained in violation of the Fifth Amendment is reviewed for prejudice under the beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18. [Citations.] That test requires the People here 'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' (*Chapman*, at p. 24.)" (*Elizalde*, *supra*, at p. 542.)

Recognizing the rule announced in *Elizalde*, the Attorney General does not assert the statements at issue were properly admitted. Instead, the Attorney General argues there was ample additional, independent evidence of Love's gang membership such that the error was harmless beyond a reasonable doubt. We agree. Love's gang membership was convincingly established by other evidence, including pictures of Love's extensive array of Noe Luv tattoos, many of which were visible when Donald was shot, and the testimony of the People's gang expert witnesses who stated the tattoos showed Love's

8

active gang membership. Specifically, Stoll testified that gang tattoos show an allegiance to the gang until the tattoos are either removed or covered.

Further, Marquez stated he was aware of Love's membership in Noe Luv from his investigations of the gang. The fact was also supported by Jamison's testimony indentifying Love as a gang member. Accordingly, we conclude the admission of the challenged statements was harmless beyond a reasonable doubt.

II

*Gang Enhancements*

Love next contends insufficient evidence supported the jury's true findings on the gang enhancement allegations under section 186.22, subdivision (b). Specifically, Love argues that the prosecution failed to establish that members of the Noe Luv gang engaged in a pattern of criminal activity as required under section 186.22, subdivision (e).

A

" 'In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] "A reviewing court neither

9

reweighs evidence nor reevaluates a witness's credibility." [Citation.]' " (*People v. Livingston* (2012) 53 Cal.4th 1145, 1170.) "The relevant facts must, however, meet the statutory requirements for a gang enhancement in order for it to apply." (*People v. Garcia* (2014) 224 Cal.App.4th 519, 523 (*Garcia*).)

"Section 186.22, subdivision (b)(1)[,] provides for a sentence enhancement for 'any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members. . . .' " (*Garcia*, *supra*, 224 Cal.App.4th at p. 523.) The statute defines a "criminal street gang" as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated [within the statute], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).) In turn, section 186.22, subdivision (e), "defines a 'pattern of criminal gang activity' as 'the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the [enumerated offenses], provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses *occurred within three years after a prior offense*, and the offenses were committed on separate occasions, or by two or more persons . . . .' " (*Garcia*, *supra*, at p. 523, italics added.)

B

Love contends the gang enhancements must be reversed because the prosecution failed to establish that the most recent conviction by a member of Noe Luv occurred within three years of the charged offenses. The prosecution presented testimony from Officer Marquez concerning prior convictions of four other Noe Luv members. Marquez stated that the most recent relevant crime was committed by Noe Luv member Marselle Thompson, who was convicted of possession of firearm by an ex-felon on September 7, 2012. Love asserts the relevant date is the day Thompson committed the crime and that there was no evidence presented to establish that date. Love's assertion is not well taken.

The District Attorney asked Marquez about the convictions of four Noe Luv gang members. With each of the first three Noe Luv members, Marquez established the date of the conviction, followed by the date the crime was committed. The prosecutor then asked Marquez if he was familiar with Thompson. Marquez responded affirmatively. Following the established pattern of questioning, the prosecutor asked Marquez: "Date of birth July 2, 1989, convicted on September 7, 2012 of felon in possession of a firearm?" Marquez responded "Yes." The prosecutor then asked: "Date of conviction on or about December 4th, 2011." To which Marquez also responded "Yes."

Love asserts the two quoted questions created ambiguity about the date of conviction and provide no evidence establishing Thompson committed the crime within the relevant time period. However, when the colloquy about Thompson is considered in the context of the pattern of questioning by the prosecutor, it was reasonable for the jury to conclude that the second and earlier date, December 4, 2011, was the date the crime

11

was committed, and not the date of conviction, which had just been established. This testimony sufficiently established Thompson committed the offense after April 30, 2010, and within three years of the date Love was alleged to have committed the instant crimes.[4]

## III

### *Failure to Instruct on Lesser Included Offense*

Love asserts the trial court erred by failing to instruct the jury, sua sponte, on the lesser included offense of attempted voluntary manslaughter based on a theory of imperfect, or unreasonable, self-defense. He contends the record contains substantial evidence to absolve him of attempted murder and justify a conviction of voluntary manslaughter.

### A

A trial court has a sua sponte obligation to instruct on a lesser included offense when the offense is supported by evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 162.) The duty to instruct does not arise if there is " '*any* evidence, no matter how weak' " in support of the lesser offense, but rather only arises if there is evidence " 'substantial enough to merit consideration' by the jury." (*Ibid.*) Substantial evidence exists if there is evidence that a reasonable jury could find persuasive. (*Ibid.*) In deciding whether there is substantial evidence to warrant the instruction, the court should not evaluate the credibility of witnesses and should resolve doubts in favor of giving the

---

[4]    The minute order for Thompson's conviction is dated September 7, 2012, and does not list the date the offense was committed.

instruction.  (*Ibid.*; see *People v. Strozier* (1993) 20 Cal.App.4th 55, 63.)  If the evidence in support of the lesser offense is " 'minimal and insubstantial,' " however, the court need not give the instruction.  (*People v. Barton* (1995) 12 Cal.4th 186, 201 (*Barton*).)

Attempted voluntary manslaughter based on unreasonable self-defense is a lesser included offense of attempted murder.  (*Barton*, *supra*, 12 Cal.4th at pp. 200-201.)  If the defendant actually, but unreasonably, believed there was an imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and is guilty only of attempted voluntary manslaughter.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)  The trial court has a sua sponte duty to instruct on this theory "whenever the evidence is such that a jury could reasonably conclude that the defendant [acted] in the unreasonable but good faith belief in having to act in self-defense."  (*Barton*, *supra*, at p. 201.)

Unreasonable self-defense requires the defendant actually believe (1) there is a danger of harm and (2) that the harm is imminent.  (*People v. Manriquez*, *supra*, 37 Cal.4th at p. 581.)  " '[T]he doctrine is narrow.  It requires without exception that the defendant must have had an *actual* belief in the need for self-defense. . . .  Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice.  The defendant's fear must be of *imminent* danger to life or great bodily injury.  ' " '[T]he peril must appear to the defendant as immediate and present and not prospective or even in the near future.  An imminent peril is one that, from appearances, must be instantly dealt with.' " ' " (*Ibid.*, italics omitted.)  "On appeal, we apply a de novo standard of review."  (*Ibid.*)

B

Here, the record is devoid of evidence suggesting Love had an actual belief in the need for self-defense against imminent danger. In support of his argument, Love points to Malone's testimony. Malone first testified that while Donald and his companions were at the top of the stairs, Malone "couldn't hear really what they were saying. It just looked like they had a problem." Malone also testified that when Donald was halfway down the staircase, heading toward the car, Donald stated "What the hell are you looking at, Cuz?" and Love asserts this evidence shows he believed he was in imminent danger of being gravely injured. We disagree.

Malone did not testify he feared for his own life in that "scared moment," or that he thought Love held such a fear. In fact, Malone testified that as Donald came down the stairs towards the car, Love stated to Malone "Look at this Nigga coming up on the car." This statement does not suggest Love had an imminent fear for his safety. Further, Donald and his companions were on foot while Love was driving a car that was pointed away from Donald. Malone and Donald testified Love had started to drive away from Donald by the time he fired a gun and Love fired the gun over his shoulder and backwards out of his window. We do not agree with Love's assertion that Donald's antagonizing statement and Malone's testimony that it was a "scared moment" showed Love had an actual fear of imminent harm. The court did not err by failing to provide an imperfect self-defense instruction.

14

IV

*Ineffective Assistance of Counsel*

Love contends he received ineffective assistance of counsel because his attorney failed to request the dismissal of one of his prior strike offenses under the authority of *Romero*, *supra*, (1996) 13 Cal.4th 497.  The Attorney General responds that the circumstances did not warrant such a request and even if they did, Love has not established he was prejudiced by his counsel's failure.

A

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel."  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  That right "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*Ibid.*)  A defendant claiming ineffective assistance of counsel has the burden to show: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *Ledesma*, *supra*, at pp. 216, 218.)  Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland*, *supra*, at p. 694.)

In addition,"[r]eviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no

15

rational tactical purpose for counsel's omissions."  (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see also *People v. Anderson* (2001) 25 Cal.4th 543, 569 ["When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation"].)

B

In *Romero*, *supra*, 13 Cal.4th at pages 529-530, the California Supreme Court held that section 1385, subdivision (a), permits a court acting on its own motion and "in furtherance of justice" to strike prior felony conviction allegations in cases brought under the Three Strikes law.  Although the Legislature has not defined the phrase "in furtherance of justice" contained in section 1385, subdivision (a), the California Supreme Court has held that this language requires a court to consider both the " ' "constitutional rights of the defendant, and the interests of society represented by the People" ' "  in determining whether to strike a prior felony conviction allegation.  (*Romero*, *supra*, 13 Cal.4th at p. 530 (italics omitted).)

In *People v. Williams* (1998) 17 Cal.4th 148, 161, the court explained that, in determining whether to strike or vacate a prior strike allegation or finding under the Three Strikes law "in furtherance of justice" pursuant to section 1385, subdivision (a), the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not

16

previously been convicted of one or more serious and/or violent felonies." A relevant, indeed "overarching consideration," in determining whether it is appropriate to strike a prior conviction allegation is the length of the defendant's sentence. (*People v. Garcia* (1999) 20 Cal.4th 490.) " 'Ultimately, a court must determine whether "the defendant may be deemed outside the scheme's spirit, in whole or in part." [Citation.]' " (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 960.)

C

Love contends his counsel's failure to bring an application to strike one of his prior strike allegations fell below the standard of conduct expected of a reasonably competent criminal attorney because Love's case falls "outside the spirit of the [T]hree [S]trikes laws" and a sentence of 70 years to life in this case is unjust. In support of this assertion, Love characterizes his two prior strike offenses (both burglaries) as "not that serious" and notes they were committed within eight months of each other when he was very young, just 18 and 19 years old. Love also points to the antagonistic actions of his victim as a justification for his own conduct, and contends his prospects of reform are good because at the time he was arrested he had stable housing and held a job.

We agree with Love that his attorney's failure to bring an application to strike one of his prior strike allegations fell below the standard of conduct expected of a reasonably competent defense attorney. Indeed, Love's counsel indicated his intention to do so at the trial on the strike priors, but failed to follow through. There was no detriment to filing such a request and no ascertainable tactical reason to forego it. The 15-year reduction in

17

sentence that Love could receive, in effect preventing the imposition of a de facto sentence of life without parole, is significant.

The Attorney General's response to Love's ineffective assistance assertion is that this is not a case in which the court would exercise discretion under section 1385, subdivision (a), to strike a strike prior conviction. The Attorney General asserts that even if the request were made, counsel's failure to do so was not prejudicial because the request would not have been granted.

This court, however, is not tasked with determining a *Romero* request in the first instance. Rather, such requests are matters vested in the sound discretion of the trial court, which must determine whether, considering all the circumstances before it, the interests of justice would be served by dismissing a prior strike conviction. (See, e.g. *People v. Zichwic*, *supra*, 94 Cal.App.4th at p. 961 ["An appellate court is not authorized to substitute its judgment of the relative weights of aggravating and mitigating factors properly considered by the trial court"].) We are hesitant to vest this discretionary determination in this court under the rubric of predicting the likely outcome of a *Romero* request. In light of the length of the sentence imposed here, we cannot say with certainty that had a *Romero* request been made there is no reasonable probability that the trial court would not have granted it.

Therefore, we vacate the sentence imposed on Love and remand with directions that the trial court conduct a new sentencing hearing at which it can consider a *Romero* request by Love. (See § 1260 ["The court may reverse, affirm, or modify a judgment or order appealed from . . . and may, if proper, remand the cause to the trial court for such

18

further proceedings as may be just under the circumstances"].)  We emphasize, however, that we express no opinion as to whether such a request should be granted by the trial court.  Our role is limited solely to ensuring Love has the opportunity to be heard.

V

*Correction of Abstract of Judgment*

The parties agree the abstract of judgment contains an error and does not accurately reflect the sentence imposed by the trial court.  Specifically, the abstract states a sentence of 70 years to life, rather than 45 years to life, was imposed on count 1 and that a 25-year term was imposed on the enhancement for discharging a firearm causing great bodily injury.  Because we remand for resentencing so that Love can bring a *Romero* request, the issue is moot.  The new abstract of judgment should accurately reflect the sentence ultimately imposed.

DISPOSITION

The sentence is vacated and the cause is remanded to the trial court with directions to hold a new sentencing hearing to consider a *Romero* request.  In all other respects, the judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

McDONALD, J.

AARON, J.

19